J-S24037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALPHONSO REED | |
| Appellant | No. 1483 MDA 2015 |

Appeal from the Judgment of Sentence January 23, 2013
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001482-2011

BEFORE:  GANTMAN, P.J., BOWES, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 04, 2016**

Appellant, Alphonso Reed, purports to appeal *nunc pro tunc* from the judgment of sentence entered in the Lebanon County Court of Common Pleas, following his convictions for delivery of a controlled substance, criminal use of communication facility, and two counts of criminal conspiracy.[1]  For the following reasons, we conclude the PCRA court erred in reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*.  Accordingly we reverse the order granting this relief and remand the case to the PCRA court for further proceedings.

In its opinion, the PCRA/trial court set forth the relevant facts of this

_____

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 7512(a) and 903(a)(1), respectively.

case as follows:

> On or about June 2, 2011, Detectives Ryan Mong ["Det. Mong"] and Adam Saul ["Det. Saul"] were conducting surveillance of an alleged drug sale between an unknown individual and an undercover officer, Sergeant Brent Hopkins ["Sgt. Hopkins"]. A confidential informant arranged for [Sgt. Hopkins] to meet an individual identified as Charles Holloway ["Mr. Holloway"]. After meeting Sgt. Hopkins, [Mr.] Holloway made a phone call and a short time later an unidentified individual came onto the scene. Det. Mong described him as an older man with a graying beard. This individual handed an item to [Mr.] Holloway who then turned and immediately handed a bag of crack cocaine to [Sgt. Hopkins]. After the transaction was complete, the [detectives] followed the individual on foot until they lost sight of him. That individual remained unknown and was identified in [the case report] as merely "Juan Doe."

> On or about August 19, 2011, at approximately 7:30 p.m., [Appellant] was walking along the 800 block of Chestnut Street, Lebanon, PA, when [Det.] Mong and [Det.] Saul drove by in an unmarked vehicle. Det. Mong recognized [Appellant] as the "Juan Doe" with the graying beard from the June 2, 2011 incident. Det. Mong and [Det.] Saul approached [Appellant] in order to determine his name. The [d]etectives had their badges in plain view and Det. Mong identified himself to [Appellant]. Det. Mong testified that he did not intend on arresting [Appellant] at that time. Det. Saul stood slightly behind Det. Mong during the interaction with [Appellant], close enough to hear the conversation and to assist Det. Mong if needed. Det. Mong asked [Appellant] for some identification. [Appellant] handed a Pennsylvania Identification Card to Det. Mong, who radioed the information to dispatch to determine if there were any outstanding warrants for [Appellant]. Det. Mong told [Appellant] that they had stopped him because they recognized his as a person who had sold drugs to an undercover officer. Det. Mong returned [Appellant's] identification. Dispatch notified Det. Mong that there were no outstanding warrants for [Appellant]. Det. Mong testified that he could not recall if he had returned [Appellant's] identification before stating that [Appellant]

- 2 -

was stopped because of the sale of drugs.

Det. Mong asked [Appellant] if he had any drugs or weapons on his person, to which [Appellant] replied in the negative. Det. Mong then asked [Appellant] if he would consent to a search of his person, which [Appellant] replied in the affirmative. This search produced thirteen (13) bags of crack cocaine, two [cellphones], and money. After the search, [Appellant] was arrested and read his [**Miranda**] warnings.

(Trial Court Opinion, filed September 11, 2015, at 2-4).

Procedurally, on November 11, 2011, the Commonwealth charged Appellant at docket # CP-38-CR-0001482-2011, with delivery of a controlled substance, criminal use of communication facility, and two counts of criminal conspiracy in connection with the June 2, 2011 drug transaction. The Commonwealth also charged Appellant at docket # CP-38-CR-0001483-2011, with possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, and possession of drug paraphernalia in connection with the August 19, 2011 search of Appellant's person. On December 23, 2011, Appellant filed a pre-trial motion in which he sought the suppression of all evidence seized during the August 19, 2011 interaction with police. Specifically, Appellant challenged whether the police had reasonable suspicion to subject Appellant to an investigative detention and whether he gave valid consent to the search of his person. The court conducted a hearing on January 25, 2012, and partially granted Appellant's suppression motion on May 23, 2012. The court determined the August 19, 2011 investigative detention of Appellant was lawful but Appellant's consent

to the search was invalid. As a result, the court dismissed all of the charges against Appellant at docket # CP-38-CR-0001483-2011.

On November 15, 2012, Appellant proceeded to a bench trial for the June 2, 2011 charges at docket # CP-38-CR-0001482-2011. At trial, the Commonwealth presented various witnesses including Det. Mong, who testified that on August 19, 2011, he immediately recognized Appellant as the unidentified suspect involved in the June 2, 2011 drug transaction with Sgt. Hopkins. Following trial, the court convicted Appellant of delivery of a controlled substance, criminal use of communication facility, and two counts of criminal conspiracy. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report. On January 23, 2013, the court sentenced Appellant to concurrent terms of four (4) to ten (10) years' imprisonment for the delivery of a controlled substance conviction, twenty-seven (27) months to ten (10) years for the conspiracy to deliver a controlled substance conviction, and eighteen (18) months to seven (7) years for the criminal use of communication facility conviction. The court imposed a mandatory minimum sentence for Appellant's conviction of delivery of a controlled substance because the offense took place in a school zone.

Appellant timely filed a notice of appeal on January 29, 2013. On February 14, 2013, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant

- 4 -

timely complied on March 4, 2013. In his concise statement, Appellant raised challenges to the sufficiency of the evidence and the weight of the evidence. This Court affirmed Appellant's judgment of sentence on November 25, 2013. **See Commonwealth v. Reed**, No. 244 MDA 2013, unpublished memorandum (Pa.Super. filed November 25, 2013) (concluding sufficiency of evidence issue lacked merit and weight of evidence issue was waived for failing to preserve it in timely post-sentence motion).

On March 17, 2014, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA").[2] The court appointed counsel, who filed an amended petition on August 15, 2014, and a second amended petition on October 3, 2014. In the second amended PCRA petition, Appellant claimed prior counsel was ineffective for failing to: (1) preserve Appellant's challenge to the weight of the evidence; (2) preserve Appellant's challenge to the court's partial denial of Appellant's suppression motion; and (3) challenge the court's imposition of a mandatory minimum sentence for Appellant's delivery of a controlled substance conviction under **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). The PCRA court held an evidentiary hearing on April 27, 2015. On May 29, 2015, the PCRA court granted relief by reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*, limited to Appellant's

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

challenges to the weight of the evidence and the partial denial of Appellant's suppression motion. Appellant immediately filed a notice of appeal *nunc pro tunc*. On June 2, 2015, the court ordered Appellant to file a Rule 1925(b) statement, and Appellant complied. On June 25, 2015, with the court's permission, Appellant withdrew his notice of appeal and filed a *nunc pro tunc* post-sentence motion. In his *nunc pro tunc* post-sentence motion, Appellant raised challenges to the weight of the evidence, the partial denial of his pre-trial suppression motion, and the imposition of the mandatory minimum sentence for his delivery of a controlled substance conviction. On August 11, 2015, the court denied Appellant's post-sentence motion and did not address Appellant's sentencing issue. On August 31, 2015, Appellant filed his "reinstated" notice of appeal *nunc pro tunc*. That same day, the court ordered Appellant to file a Rule 1925(b) statement, and Appellant complied on September 10, 2015.

Appellant raises the following issues for our review:

> WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED AT THE TRIAL?

> WHETHER THE TRIAL COURT ERRED WHEN IT DENIED [] APPELLANT'S PRE-TRIAL MOTION CHALLENGING THE REASONABLE SUSPICION FOR THE STOP AND THE INITIAL PROBABLE CAUSE FOR THE ARREST OF [] APPELLANT?

(Appellant's Brief at 6).

Before we can address the merits of the issues presented on appeal, we must determine whether this appeal is properly before us, where

Appellant previously had a counseled direct appeal and this Court affirmed the judgment of sentence on November 25, 2013. In other words, we must determine if reinstatement of Appellant's direct appeal rights was the proper remedy under the circumstances of this particular case.

"[A]n accused who is deprived entirely of his right of direct appeal by counsel's failure to perfect an appeal is *per se* without the effective assistance of counsel, and is entitled to reinstatement of his direct appellate rights." ***Commonwealth v. Grosella***, 902 A.2d 1290, 1293 (Pa.Super. 2006) (quoting ***Commonwealth v. Johnson***, 889 A.2d 620, 622 (Pa.Super. 2005)). Importantly, there are very few circumstances where counsel's conduct warrants a presumption of prejudice and the reinstatement of a petitioner's direct appeal rights *nunc pro tunc*. ***Commonwealth v. Adam Reed***, 601 Pa. 257, 272, 971 A.2d 1216, 1225 (2009). These circumstances include: (1) where counsel failed to file a requested direct appeal; (2) where counsel failed to file a concise statement of errors claimed of on appeal; or (3) where counsel failed to file a requested petition for allowance of appeal. ***Id.*** at 272-73, 971 A.2d at 1225. "In those extreme circumstances, where counsel has effectively abandoned his…client and cannot possibly be acting in the client's best interests, our Supreme Court has held that the risk should fall on counsel, and not on his client." ***Commonwealth v. West***, 883 A.2d 654, 658 (Pa.Super. 2005).

On the other hand, "the reinstatement of direct appeal rights is not the

proper remedy when appellate counsel perfected a direct appeal but simply failed to raise certain claims." *Grosella, supra* at 1293. Significantly:

> Where a petitioner was not entirely denied his right to a direct appeal and only some of the issues the petitioner wished to pursue were waived, the reinstatement of the petitioner's direct appeal rights is not a proper remedy. In such circumstances, the [petitioner] must proceed under the auspices of the PCRA, and the PCRA court should apply the traditional three-prong test for determining whether appellate counsel was ineffective.

*Id.* at 1293-94 (internal citations and parentheticals omitted).

Instantly, appellate counsel actually filed and perfected a direct appeal on Appellant's behalf in 2013, in which counsel raised challenges to the sufficiency of the evidence and the weight of the evidence. This Court addressed the sufficiency of the evidence issue on the merits, disposed of the weight of the evidence issue on the basis of waiver, and affirmed the judgment of sentence on November 25, 2013. Thus, counsel did not completely foreclose appellate review but simply "narrowed its ambit." *See id.* (distinguishing between cases where counsel's failure extinguished defendant's right to direct appeal and cases where counsel might have waived or abandoned some but not all issues on direct appeal). Therefore, we conclude the PCRA court erred in reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*. Instead, the PCRA court should have considered Appellant's ineffective assistance of counsel claims under the auspices of the PCRA and applied the traditional three-prong ineffective assistance of counsel test. *Id.*

For the foregoing reasons, we reverse the order reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc* and remand this matter to the PCRA court to address Appellant's claims under the auspices of the PCRA and the traditional test for ineffective assistance of counsel. In like manner, the PCRA court must address Appellant's sentencing claim. Accordingly, we remand this case to the PCRA court for proceedings consistent with this decision.

Case remanded to PCRA court with instructions for further PCRA proceedings. Jurisdiction is relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016